UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DEADRIA FARMER-PAELLMANN, *et al.*,**

Plaintiff,

v.

**SMITHSONIAN INSTITUTION,**

Defendant.

Case No. 1:22-cv-3048 (CRC)

## OPINION AND ORDER

Plaintiffs, Deadria Farmer-Paellmann and Restitution Study Group, seek an emergency temporary restraining order to prevent the Smithsonian Institution from repatriating a portion of its collection of artifacts known as the "Benin Bronzes" to a national museum in Nigeria. The motion is denied.

Plaintiffs have not met their burden of showing they are likely to succeed on their claims because they appear to lack standing and have not asserted any valid cause of action to challenge the Smithsonian's decision to transfer some of the Bronzes.

Plaintiffs base standing on the assertion that they have a concrete personal stake in retaining access to the Bronzes because Ms. Farmer-Paellmann is a descendant of individuals who, between the 16th century and 19th century, were sold into slavery by the Kingdom of Benin in exchange for the metal that was used to fabricate the Bronzes. But even if Plaintiffs could establish that ancestral link to the Bronzes—which they have not done on this record— such an attenuated connection would not give rise to the type of "concrete and particularized" injury necessary for standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).[1]

---

[1] Plaintiffs might be able to establish standing based on a different injury, such as harm to an academic or aesthetic interest in the Bronzes, which might be heightened by their alleged ancestral ties, but they do not advance those arguments in any detail.

Plaintiffs are unlikely to succeed on the merits of any of their asserted claims even if they have standing.  Plaintiffs' *ultra vires* claim fails because the Smithsonian's actions are not subject to judicial review under the Administrative Procedure Act.  See Dong v. Smithsonian Inst., 125 F.3d 877, 883 (D.C. Cir. 1997).  In any event, the authorizing statute of the Smithsonian's Museum of African Art, where the Bronzes are held, explicitly empowers its Board to, among other things, "transfer" works in its collection.  See 20 U.S.C. § 80m(a)(2).  Accordingly, the Smithsonian does not appear to have acted beyond its statutory authority by reaching an agreement with Nigeria to transfer some of the Benin Bronzes.

Plaintiffs' claims that the transfer would breach a trust relationship fare no better.  While Plaintiffs assert that the Smithsonian holds its collection in constructive trust for the people of the United States or a subsection of U.S. citizens that descended from West Africa, the D.C. Circuit has held that only the United States holds legal title to the Smithsonian collection as its trustee.  Dong, 125 F.3d at 883.  Nor would it be appropriate for the Court to create a constructive trust over the Bronzes, as Plaintiffs request, because they have not alleged that they hold some property interest in the Bronzes that the Smithsonian obtained through improper means.  See U.S. v. Taylor, 867 F.2d 700, 703 (D.C. Cir. 1989) ("Courts impose a constructive trust to redress the injustice that would otherwise occur when one person has fraudulently or wrongfully obtained the property of another.").

Plaintiffs' unjust enrichment claim suffers from a similar defect.  Unjust enrichment occurs when a defendant receives a benefit from the plaintiff without providing adequate compensation for that benefit.  Rapaport v. Dep't of Treas., 59 F.3d 212, 217 (D.C. Cir. 1995).  Here, Plaintiffs do not seek compensation for any benefit they bestowed on the Smithsonian.  Rather, they seek to block the Smithsonian from voluntarily transferring property that it legally holds to a third-party.  That does not fit the mold of an unjust enrichment claim.

Accordingly, Plaintiffs are not likely to prevail on any of their claims.

Plaintiffs also have not adequately alleged that they will suffer irreparable harm if a portion of the Smithsonian's collection of Benin Bronzes is transferred to Nigeria. First, at least some of the Bronzes will remain at the Museum of African Art for the foreseeable future. Compl. ¶ 65. Second, if Plaintiffs are interested in visiting the transferred Bronzes, they can do so by traveling from New York to Nigeria.[2] While that would be more expensive and inconvenient than seeing the Bronzes in Washington, D.C., such harms do not constitute irreparable injuries. Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction] are not enough." (quoting Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985))).

For all these reasons, Plaintiffs' [2] Emergency Motion for Temporary Restraining Order and Preliminary Injunction is hereby **DENIED**.[3]

**SO ORDERED.**

Date: 10/14/2022

CHRISTOPHER R. COOPER
United States District Judge

---

[2] Plaintiffs suggest that the Bronzes may not be displayed publicly after they arrive in Nigeria. Pls.' Reply at 3-4. That suggestion is inconsistent with Plaintiffs' acknowledgement that the Bronzes will be entrusted to the Edo Museum of West African Art, Pls.' Mot. TRO at 1, and with the Court's understanding of the overall purpose of the transfer agreement.

[3] The government has also moved to dismiss the case. The Court will reserve judgment on that motion. Should Plaintiffs wish to press on following this ruling, they may respond to the government's motion to dismiss by either filing a supplemental opposition within the time allowed under the Local Rules or amending their complaint as of right.